**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-1308-WJM-NRN

OMAR FADUL,

    Plaintiff,

v.

SKY RIDGE MEDICAL CENTER,
MEDICREDIT, INC.,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

*Pro se* Plaintiff Omar Fadul sues Sky Ridge Medical Center ("Sky Ridge") and Medicredit, Inc. ("Medicredit") (jointly, "Defendants") under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), and Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq.* ("CCPA"), alleging that Defendants overcharged Fadul for services that were never provided. (ECF No. 23 at 6–7.) Plaintiff seeks "the maximum punitive damages" as a result of Defendants' conduct. (*Id.* at 6.)

Before the Court is Defendants' Motion for Summary Judgment ("Motion"), filed on March 19, 2020. (ECF No. 38.) For the reasons explained below, the Motion is granted.

## I.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

Where, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotation marks omitted). A party must support an assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"[C]onclusory and self-serving statements are insufficient to survive summary judgment." *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) (citing *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)). Likewise, "general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment." *Pasternak v. Lear Petroleum Expl., Inc.*, 790 F.2d 828, 834 (10th Cir. 1986). Rather, "[t]o survive summary judgment, a nonmoving party must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016) (internal quotation marks omitted). Moreover, this Court is not obliged to "comb the record" to identify factual disputes or make a party's case for it. *Ford*, 222 F.3d at 777. Rather, "on a motion for summary judgment, *it is the responding party's burden* to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (internal quotation marks omitted) (emphasis added).

## II. PROCEDURAL MATTERS

The undersigned's Revised Practice Standards impose the following requirement on a summary judgment movant:

> All motions for summary judgment . . . must contain a section entitled "Movant's Statement of Material Facts." This Statement shall set forth in simple, declarative sentences, all of which are separately numbered and paragraphed, each

> material fact the movant believes supports movant's claim that movant is entitled to judgment as a matter of law. Each statement of fact must be accompanied by a specific reference to supporting evidence in the record.

WJM Revised Practice Standard III.E.3. The Revised Practice Standards further clarify the "[a]ny party opposing the motion for summary judgment . . . shall provide a "Response to Movant's Material Facts" in its brief, admitting or denying the asserted material facts set forth by the movant." WJM Revised Practice Standard III.E.4.

Plaintiff does not respond to Defendants' Statement of Material Facts. Under Federal Rule of Civil Procedure 56(e)(2), where a party fails to properly address another party's assertions of fact, a court may "consider the fact undisputed for purposes of the motion." *See Zapata v. Colo. Christian Univ.*, 2020 WL 925704, at *3 (D. Colo. Feb. 26, 2020) ("[W]hen a party fails to address a fact, the court may consider the fact undisputed or grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to summary judgment.").

Although "[a] *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), the Court cannot be a *pro se* litigant's advocate, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). Importantly, a party's *pro se* status "does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil [ ] Procedure." *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994); *Fleming v. Sims*, 2017 WL 8294286, at *3 (D. Colo. Dec. 5, 2017) (recognizing that *pro se* plaintiff's failure to include statement of material

4

facts in his motion for summary judgment causes the motion to be "subject to denial on this basis alone").

Accordingly, Court will deem Defendants' stated material facts to be admitted where they are supported by documentary evidence.[1]

### III.  BACKGROUND[2]

Plaintiff visited Sky Ridge's emergency department on June 8, 2018 at approximately 2:06 p.m. due to stomach pain and constipation.  (ECF No. 38 at 2, ¶ 1; ECF No. 38-1 at 9; ECF No. 38-9 at 1.)

At the time he was admitted, Plaintiff signed the Conditions of Admission and Consent for Outpatient Care.  (ECF No. 38 at 3, ¶ 6; ECF No. 38-12.)  In particular, Plaintiff recognized the following:

> **5. Financial Agreement.** In consideration of the services to be rendered to Patient, Patient or Guarantor individually promises to pay the Patient's account at the rates stated in the hospital's price list (known as the "Charge Master") effective on the date the charge is processed for the service provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the Patient's account.  Some special items will be priced separately if there is no price listed on the Charge Master.  An estimate of the anticipated charges for services to be provided to the Patient is available upon request from the hospital.  Estimates may vary significantly from the final charges based on a variety of factors, including, but not limited to, the course of treatment, intensity of care,

---

[1]  The Court has repeatedly reminded Plaintiff that he needed to comply with the Federal Rules of Civil Procedure, Local Rules of Practice, and the Court's practice standards.  (ECF No. 15; ECF No. 17 at 2.)

[2]  The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

> physician practices, and the necessity of providing additional
> goods and services.
>
> . . .
>
> I also understand that, as a courtesy to me, the hospital may
> bill an insurance company offering coverage, but may not be
> obligated to do so.  Regardless, I agree that, except where
> prohibited by law, the financial responsibility for the services
> rendered belongs to me, the Patient or Guarantor.  I agree
> to pay for services that are not covered and covered charges
> not paid in full by insurance coverage including, but not
> limited to, coinsurance, deductibles, non-covered benefits
> due to policy limits or policy exclusions, or failure to comply
> with insurance plan requirements.

(ECF No. 38 at 3–4, ¶ 7; ECF No. 38-12 at 2–3.)

Plaintiff was triaged at approximately 2:14 p.m.  (ECF No. 38 at 2, ¶ 2; ECF No. 38-10 at 1.)  Thereafter, Plaintiff was seen by David Holland, M.D., who suggested a "multipronged approach" of giving Plaintiff MiraLAX Colace and a Fleet enema and prescribing GoLYTELY.  (ECF No. 38 at 2, ¶¶ 3–4; ECF No. 38-9 at 2.)  Upon being discharged, Plaintiff was provided discharge instructions, which he signed.  (ECF No. 38 at 3, ¶ 5; ECF No. 38-11 at 8.)

After Plaintiff was discharged, Sky Ridge submitted a claim to Plaintiff's health insurer for costs related to his June 8, 2018 Sky Ridge emergency department visit. (ECF No. 38 at 4, ¶ 8; ECF No. 38-2 at 6–7.)  Sky Ridge applied an insurance contractual adjustment of $1,878, and Plaintiff's health insurer paid Sky Ridge $1,548.70.  (ECF No. 38 at 4, ¶¶ 9–10; ECF No. 38-2 at 4–5.)  Sky Ridge then billed Plaintiff the remaining balance of $273.30.  (ECF No. 38 at 4, ¶ 11; ECF No. 38-2 at 4–5.)

Plaintiff did not pay that balance, so on December 17, 2018, Sky Ridge placed

Plaintiff's account with Medicredit for collection of the unpaid balance.  (ECF No. 38 at 4, ¶ 12; ECF No. 38-3 at 1, ¶ 3; ECF No. 38-4 at 1.)  As required by the Fair Debt Collection Practices Act, Medicredit sent Plaintiff an initial notice of the debt on December 25, 2018.  (ECF No. 38 at 5, ¶ 14; ECF No. 38-3 at 2, ¶ 6; ECF No. 38-5.)  Medicredit did not receive a written dispute of the debt from Plaintiff.  (ECF No. 38 at 5, ¶ 15; ECF No. 38-3 at 2, ¶¶ 7–8.)  Nor did Medicredit receive notice of any dispute concerning its credit reporting of the debt from a credit reporting agency ("CRA").  (ECF No. 38 at 5, ¶ 16; ECF No. 38-3 at 2, ¶¶ 9–10.)

Plaintiff, proceeding *pro se*, filed this lawsuit in County Court in Douglas County, Colorado on April 4, 2019, and the lawsuit was removed by Defendants to federal court on April 5, 2019.  (ECF No. 1.)  Plaintiff filed the Amended Complaint on August 7, 2019, alleging that Sky Ridge and Medicredit's actions have violated the FCRA and the CCPA.  (ECF No. 23 at 3.)  In particular, he alleges that Defendants overcharged him for a service that was not rendered and added a negative item to his credit report, which brought down his credit score and made it more expensive for him to complete a refinancing.  (*Id.* at 6–7.)

Defendants moved for summary judgment on March 19, 2020.  (ECF No. 38.)  Plaintiff responded on March 23, 2020 (ECF No. 39), and Defendants replied on April 3, 2020 (ECF No. 41).

## IV.  ANALYSIS

### A.  FCRA Claim

The Tenth Circuit has held that "the FCRA imposes a duty on persons who provide information to credit reporting agencies ("furnishers") to accurately report

information." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012); 15 U.S.C. § 1681s–2(a). While the FCRA gives consumers a private right of action against those who violate its provisions, *see* 15 U.S.C. § 1681n (right of action against willful violators); 15 U.S.C. § 1681o (right of action against negligent violators), "that right of action is limited to claims against the credit reporting agency; *it does not extend to furnishers*." *Sanders*, 689 F.3d at 1147 (citing 15 U.S.C. § 1681s–2(c)) (emphasis added); *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002).

However, if a consumer disputes the accuracy of information provided by a furnisher to a CRA, then under § 1681s-2(b)(1) of the FCRA, "after receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the person providing the information must take certain steps to resolve that dispute. These steps include: (1) conducting an investigation with respect to the disputed information; (2) reviewing all relevant information provided by the consumer reporting agency; and (3) reporting the results of the investigation to the consumer reporting agency. *Id.* §§ 1681s-2(b)(1)(A)–(C). "If, after investigation, the furnisher finds that the disputed information is inaccurate, incomplete, or cannot be verified, it has a duty to modify, delete, or permanently block the reporting of that information." *Willis v. Capital One Corp.*, 611 F. App'x 500, 502 (10th Cir. 2015) (citing 15 U.S.C. § 1681s-2(b)(1)(E)).

The "duty to investigate arises only after a CRA notifies the furnisher of a dispute and, conversely, does not arise when notice is provided directly from a consumer." *Id.*;

*SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) ("Notice . . . must be given by a [CRA], and cannot come directly from the consumer."). Accordingly, "a consumer cannot recover under § 1681s–2(b) if they do not initiate the process for recovery by notifying a CRA of the dispute." *Willis*, 611 F. App'x at 502; *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1072, n.7 (D. Colo. 2009) ("[T]he text of the statute clearly provides that the notice of a dispute that creates a duty to investigate under § 1681s–2(b) is a notice that comes from a credit reporting agency, not the borrower himself.").

Plaintiff's FCRA claim is not a model of clarity. It appears, however, that Plaintiff is arguing that Defendants overcharged him for services that were never rendered and subsequently violated the FCRA by "[a]dding [a] negative item to [his] credit report which . . . impacted [his] ability to obtain a competitive interest rate" for a refinance process he was undertaking at the time.[3] (ECF No. 23 at 6–7.)

To the extent Plaintiff attempts to establish a FCRA violation by arguing that Sky Ridge and Medicredit are liable for furnishing information to the credit reporting agencies that they knew or had reasonable cause to believe was inaccurate, this is not a viable cause of action under the FCRA. *See Sanders*, 689 F.3d at 1147 (recognizing that the private right of action for false reporting may only be brought against a credit reporting agency, not against entities that provide information to the credit reporting agency).

Moreover, Plaintiff has failed to provide evidence that he disputed the negative

---

[3] As explained in Part IV.B, Plaintiff's allegation that Defendants overcharged him for services that were not provided is contradicted by the clear weight of the evidence.

item in his credit report with a CRA, such that Defendants' duty to investigate the negative item placed on Plaintiff's credit report was triggered.  See Willis, 611 F. App'x at 502.  To be clear, Plaintiff argues in his response that "[t]he negative information was disputed in writing on 5/21/2019."  (ECF No. 39 at 2.)  He does not, however, provide any evidence demonstrating that he disputed the negative credit item *with the CRA*.  Ford, 222 F.3d at 777 ("[C]onclusory and self-serving statements are insufficient to survive summary judgment."); Sanders, 689 F.3d at 1147 (holding that a district court properly dismissed a plaintiff's FCRA claim because the plaintiff did not allege notification of the dispute to a credit reporting agency); Pinson, 316 F. App'x at 751 (holding that plaintiffs failed to state a claim for relief under the FCRA because they alleged only that they notified a furnisher—not a CRA—of a dispute).  Indeed, Don Wright, Medicredit's senior vice president of operations, signed a sworn affidavit stating that "Medicredit did not receive any notice of a dispute concerning its credit reporting about the Debt from any credit reporting agency."  (ECF No. 38-3 at 2, ¶¶ 9–10; ECF No. 38 at 5, ¶ 16.)

The Court therefore finds that Plaintiff has failed to set forth specific facts from which a reasonable factfinder could find that Defendants have violated the FCRA.  Christy, 810 F.3d at 1233.  Accordingly, the Court grants Defendants' Motion as to Plaintiff's FCRA claim.

**B.      Colorado Consumer Protection Act Claim**

The Colorado legislature enacted the CCPA "to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public.  The CCPA deters and punishes businesses which commit

deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (en banc) (internal citations and quotation marks omitted).  The elements of a private CCPA cause of action are:

> (1) that the defendant engaged in an unfair or deceptive trade practice;
>
> (2) that the challenged [unfair or deceptive] practice occurred in the course of defendant's business, vocation, or occupation;
>
> (3) that [the challenged unfair or deceptive practice] significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;
>
> (4) that the plaintiff suffered injury in fact to a legally protected interest; and
>
> (5) that the challenged practice caused the plaintiff's injury.

*Id.* at 146–47.

Plaintiff alleges that Sky Ridge violated the CCPA by overcharging Plaintiff for services that were not provided.  (ECF No. 23 at 6–7; ECF No. 38-1 at 11.)  He also alleges that Medicredit violated the CCPA by demanding payment for services that he was disputing.  (ECF No. 38-1 at 11.)

Defendants argue that Plaintiff's CCPA claim fails because "Plaintiff cannot establish that either Defendant engaged in an 'unfair or deceptive trade practice.'" (ECF No. 38 at 12.)  The Court agrees.

Plaintiff's allegation that Sky Ridge overcharged him for a service that was never provided" is contradicted by the clear weight of the evidence.  According to Defendants'

11

documentary evidence, Plaintiff was seen by Dr. Holland less than thirty minutes after Plaintiff arrived at Sky Ridge's emergency department and was given a "multipronged approach" to treat his stomach pain and a prescription. (ECF No. 38 at 2, ¶¶ 3–4.) Plaintiff gives the Court no reason to doubt the authenticity of these documents, and the Court is not aware of one. Nor does Plaintiff provide any evidence demonstrating that Defendants made any misrepresentations about the prices of Sky Ridge's services, which Plaintiff agreed to pay. (ECF No. 38 at 3, ¶ 6; ECF No. 38-12.)

Accordingly, the Court finds that Plaintiff has failed to raise a genuine issue of disputed fact suggesting that Sky Ridge engaged in an unfair or deceptive trade practice. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Likewise, Plaintiff offers no evidentiary support or case law for his argument that Medicredit's attempts to collect Plaintiff's debt constitute an unfair or deceptive trade practice. Nor does he provide any evidence demonstrating that he actually disputed his debt. The Court therefore finds that Plaintiff failed to raise a genuine issue of disputed fact suggesting that Medicredit engaged in an unfair or deceptive trade practice.

However, even assuming that Plaintiff raised a genuine issue of material fact suggesting that Defendants engaged in an unfair or deceptive trade practice, the Court finds that Plaintiff has failed to provide any admissible evidence demonstrating that the challenged practice significantly impacts the public as actual or potential consumers of the Defendants' goods, services, or property. *Rhino Linings USA, Inc.*, 62 P.3d at

146–47.  It is not sufficient under the CCPA that "the defendant's industry affects the public interest."  *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 155–56 (Colo. 2007) (en banc) ("Adopting an interpretation that the public impact element of the CCPA could be satisfied simply if the defendant's industry 'affects the public interest' would render this requirement . . . meaningless.").  Instead, in determining whether an alleged practice has a significant impact on the public, courts analyze: (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously impacted others or has the significant potential to do so in the future.  *Rhino Linings, USA, Inc.*, 62 P.3d at 149.

In his response, Plaintiff cites what appear to be Yelp reviews from purported Sky Ridge patients who are dissatisfied with Sky Ridge's billing practices.[4]  (ECF No. 39-1.)  To the extent Plaintiff offers this evidence for the truth of the matter asserted, the reviews are manifestly hearsay.  *See* Fed. R. Evid. 801(c) (defining hearsay as a "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").  The Court cannot consider hearsay evidence in ruling on a motion for summary judgment.  *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) ("Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness' supposed testimony is not suitable grist

---

[4] The Court notes that the reviews do not state that Sky Ridge billed patients for services that were not rendered, which is the purportedly unfair or deceptive business practice at issue in this litigation.

for the summary judgment mill." (internal quotation marks omitted)).  Thus, Plaintiff has failed to provide any admissible evidence regarding the numbers of consumers directly affected by Defendants' purportedly unfair practices, or suggesting that the challenged practice has the significant potential to impact consumers in the future.  The Court therefore finds that Plaintiff has failed to raise a genuine issue of material fact that would allow a reasonable fact finder to conclude that Defendants' conduct significantly impacts the public.

Accordingly, the Court grants Defendants' Motion as to Plaintiff's CCPA claim.

## V.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Summary Judgment (ECF No. 38) is GRANTED;

2. Plaintiff's claims, and this action, are DISMISSED WITH PREJUDICE;

3. The Clerk shall enter judgment in favor of Defendants and against Plaintiff and shall terminate this case; and

4. Each party shall bear his or its own costs.

Dated this 22nd day of October, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge